Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| GLORIA BRIGNONI JIMÉNEZ Y OTROS<br><br>Recurridos<br><br>v.<br><br>ERICK J. DECLET Y OTROS<br><br>Recurridos<br>v.<br><br>CHUBB INSURANCE COMPANY<br>Peticionarios | TA2026CE00313 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Sobre: Daños y Perjuicios<br><br>Caso Núm. BY2023CV02981 |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de mayo de 2026.

La parte peticionaria, Chubb Insurance Company of Puerto Rico, comparece ante nos para que revisemos la *Resolución* emitida el 10 de febrero 2026, notificada el 11 de febrero de 2026, por el Tribunal de Primera Instancia, Sala de Bayamón. Mediante esta, el Foro Primario denegó una *Moción Solicitando Sentencia Sumaria* presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se expide el auto solicitado y se revoca el pronunciamiento recurrido.

I

El 30 de mayo de 2023, la señora Gloria Brignoni Jiménez y el señor Wilmy Reyes Brignoni presentaron una *Demanda* en contra de Erick J. Declet, Montier Betancourt Chinea y Hogar Casa Feliz, Inc. Según surge de la reclamación, el 13 de febrero de 2016, el

señor Reyes Brignoni suscribió un contrato para el ingreso de su madre, la señora Brignoni Jiménez, en Hogar Casa Feliz, Inc. Como parte de los servicios contratados, la institución asumiría el alojamiento, alimentación, administración de medicamentos, monitoreo de signos vitales, asistencia de enfermería y demás cuidados relacionados con su atención física y de salud.

Según se alegó en el pliego, el 10 de enero de 2023, mientras la señora Brignoni Jiménez permanecía bajo el cuidado de la referida institución, sufrió una caída como consecuencia de falta de supervisión y cuido adecuado. Luego del accidente, requirió atención médica de emergencia y recibió suturas en la cabeza, además de sufrir lesiones en el cuello y la espalda. Se esbozó que, posteriormente, el 7 de abril de 2023, la señora Brignoni Jimenez sufrió una segunda caída por alegada falta de supervisión, lo que le ocasionó una fractura de cadera izquierda que requirió intervención quirúrgica. Asimismo, se expresó que, al visitarla en el hospital, advirtieron una úlcera en la parte posterior del cuerpo.

A base de lo anterior, imputaron a la parte demandada incumplimiento contractual y conducta culposa o negligente en la prestación de los servicios de cuido. A tenor con sus alegaciones, solicitaron que se condenara solidariamente a la parte demandada al pago de un millón de dólares ($1,000,000.00) a favor de la señora Brignoni Jiménez por concepto de daños físicos y angustias mentales, y quinientos mil dólares ($500,000.00) a favor del señor Reyes Brignoni por concepto de angustias mentales, además de costas, gastos y honorarios de abogado.

El 5 de octubre de 2023, la parte demandada presentó una *Contestación a Demanda*. En esencia, admitió determinados hechos relacionados con el contrato mediante el cual se gestionó el ingreso de la señora Gloria Brignoni Jiménez en Hogar Casa Feliz, Inc. Sin

embargo, negó haber incurrido en conducta culposa o negligente en la prestación de los servicios ofrecidos por la institución. En esa misma línea, rechazó que las alegadas caídas respondieran a falta de supervisión, descuido o atención inadecuada atribuible a su personal. A su vez, sostuvo que la señora Brignoni Jiménez no se encontraba incapacitada física ni mentalmente para la fecha de uno de los incidentes alegados y que no requería atención individualizada constante. También negó que existiera nexo causal entre los daños reclamados y las actuaciones que se les imputaron. En la alternativa, plantearon que, de recaer alguna responsabilidad, procedía considerar la existencia de negligencia concurrente o comparada de la propia señora Brignoni Jiménez o de las personas encargadas de asistirla y tomar decisiones en su beneficio. Fundamentado en lo anterior, solicitó que se declarara *No Ha Lugar* la *Demanda* presentada en su contra y le impusiera a la parte demandante el pago de costas, gastos y honorarios de abogado.

Luego de varias incidencias procesales innecesarias de pormenorizar, el 17 de septiembre de 2024, la parte demandada presentó una *Demanda Contra Tercero*. En esencia, alegó que Hogar Casa Feliz, Inc. había adquirido una póliza de seguro comercial expedida por Chubb Insurance Company y que notificó oportunamente la reclamación objeto del pleito para que se le proveyera representación legal y cubierta. Sostuvo que la aseguradora denegó ambas solicitudes, al entender que las alegaciones de la demanda se encontraban comprendidas dentro de las cláusulas de exclusión de la póliza. No obstante, planteó que dicha determinación por parte de la aseguradora era errónea. A tenor con sus alegaciones, incluyó a Chubb Insurance Company y solicitó que se le proveyera representación legal y cubierta conforme a la póliza expedida.

El 16 de febrero de 2025, Chubb Insurance Company of Puerto Rico, parte peticionaria, presentó una *Contestación a Demanda Contra Tercero*. En esencia, negó la mayoría de las alegaciones formuladas en su contra y aceptó haber expedido a Hogar Casa Feliz, Inc., la póliza Commercial General Liability Núm. 41 PR 902962-5, vigente del 16 de junio de 2022 al 16 de junio de 2023, con un límite de cubierta de trescientos mil dólares ($300,000.00) por incidente y agregado. Sostuvo que, al momento de evaluar si procedía proveer defensa y cubierta, correspondía examinar las alegaciones contenidas en la *Demanda* principal junto con los términos, cláusulas, condiciones y exclusiones de la póliza emitida. Planteó que la póliza excluía reclamaciones por daños surgidos por la falta de prestación de servicios de cuido de salud, asistencia o atención brindados por la institución. También alegó que se excluían reclamaciones derivadas de actos u omisiones relacionados con servicios profesionales, tales como supervisión, evaluación, administración de medicamentos o cuidados especializados. Añadió, además, que no estaban cubiertas obligaciones asumidas exclusivamente por contrato. Así, afirmó que las reclamaciones formuladas en la demanda principal surgían precisamente de alegadas omisiones en la supervisión, cuido y atención brindada a la señora Brignoni Jiménez, así como de obligaciones contractuales alegadamente incumplidas por Hogar Casa Feliz, Inc., por lo que no se activaba la cubierta reclamada. A base de lo anterior, solicitó que se declarara *No Ha Lugar* la *Demanda Contra Tercero*, se desestimara la reclamación presentada en su contra y se impusiera a la parte promovente el pago de costas, gastos y honorarios de abogado.

Posteriormente, el 29 de mayo de 2025, las partes presentaron el *Informe de Conferencia con Antelación al Juicio*. En lo aquí

pertinente, en cuanto a la *Demanda Contra Tercero*, consignaron como hecho estipulado la existencia de la póliza Commercial General Liability Núm. 41 PR 902962-5, expedida por la parte peticionaria, Chubb Insurance Company of Puerto Rico, a favor de Hogar Casa Feliz, Inc., con vigencia del 16 de junio de 2022 al 16 de junio de 2023. Asimismo, identificaron como controversia pendiente si la referida póliza proveía defensa y cubierta respecto a las alegaciones formuladas en la demanda principal, así como la aplicabilidad de las exclusiones invocadas por Chubb Insurance Company para rechazar la reclamación presentada en su contra como tercero demandado.

Luego de varias incidencias procesales innecesarias de pormenorizar, el 4 de noviembre de 2025, Chubb Insurance Company of Puerto Rico presentó una *Moción Solicitando Sentencia Sumaria*.[1] En síntesis, sostuvo que no existían controversias reales sobre hechos materiales que impidieran la disposición sumaria de la *Demanda Contra Tercero*, por cuanto la controversia entre las partes se circunscribía a determinar si la póliza de responsabilidad general comercial expedida a favor de Hogar Casa Feliz, Inc., brindaba defensa y cubierta respecto a los daños reclamados en la *Demanda* principal.

Reiteró que la *Demanda* presentada en contra de Hogar Casa Feliz, Inc., contenía alegaciones sobre, no supervisar adecuadamente a la señora Brignoni Jiménez, incumplir deberes de cuido, asistencia, monitoreo y atención, así como permitir el desarrollo de una úlcera durante su permanencia en la institución. Afirmó que tales alegaciones surgían directamente de la prestación

---

[1] La parte peticionaria acompañó su *Moción Solicitando Sentencia Sumaria* con una comunicación electrónica remitida por Yelitza Cruz Meléndez, en representación de Hogar Casa Feliz, Inc., dirigida a Alfonso García, representante de Chubb Insurance Company, así como con copia de la póliza Commercial General Liability Núm. 41 PR 902962-5.

o alegada falta de prestación de servicios de cuido brindados a una residente de edad avanzada, por lo que se activaban las exclusiones aplicables a servicios profesionales y a servicios prestados por instituciones o proveedores dedicados al cuidado de salud. Arguyó, además, que la *Demanda* también reclamaba daños por alegado incumplimiento de obligaciones asumidas mediante el contrato suscrito para el ingreso de la señora Brignoni Jiménez en Hogar Casa Feliz, Inc., lo que, a su juicio, activaba la exclusión relacionada con responsabilidad asumida contractualmente. En consecuencia, solicitó que se dictara sentencia sumaria a su favor y se desestimara con perjuicio la *Demanda Contra Tercero* presentada en su contra.

El 4 de diciembre de 2025, Hogar Casa Feliz, Inc., presentó su *Oposición a Solicitud de Sentencia Sumaria.* En lo atinente, se opuso a la disposición sumaria del caso al sostener que subsistían controversias relativas a la causalidad, la naturaleza de los servicios prestados y las expectativas razonables de cubierta bajo la póliza expedida. En particular, planteó que la caída de la señora Brignoni Jiménez no obedeció a falta de supervisión, sino a un accidente en el que esta se cayó por sus propios medios, aun cuando contaba con la debida atención. De igual forma, afirmó que la alegada úlcera no se desarrolló mientras la señora residía en la institución, sino con posterioridad a su egreso, por lo que no podía imputársele responsabilidad a su personal. Además, reiteró que proveía servicios de naturaleza residencial y de apoyo general, no tratamiento médico especializado, por lo que las exclusiones citadas por la parte peticionaria no resultaban aplicables. A tenor con lo anterior, solicitó que se declarara *No Ha Lugar* la *Moción Solicitando Sentencia Sumaria.* No obstante, no acompañó su oposición con prueba documental alguna ni presentó una relación separada y numerada de los hechos que entendía controvertidos, con referencia específica

a la evidencia que los sustentara, conforme exige la Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

Evaluados los planteamientos de las partes, el 10 de febrero de 2026, notificada el 11 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Resolución* que nos ocupa. Mediante el referido dictamen, el Foro Primario acogió los planteamientos propuestos por la parte recurrida y denegó la *Moción Solicitando Sentencia Sumaria* presentada por la parte peticionaria. En su pronunciamiento, el tribunal sentenciador consignó como hechos en controversia, entre otros, si la señora Gloria Brignoni Jiménez fue dejada sola por el personal de Hogar Casa Feliz, Inc.; si esa circunstancia fue la causa de su caída o si, por el contrario, la caída hubiese ocurrido aun contando con supervisión adecuada; si la institución cumplía con los requerimientos del Departamento de la Familia en cuanto a la proporción de cuidadores; el momento en que se desarrolló la alegada úlcera y si esa condición era atribuible a la institución; así como la procedencia de la cubierta bajo la póliza expedida por Chubb Insurance Company frente a los hechos reclamados. Sin embargo, en su determinación, el propio Tribunal de Primera Instancia concluyó que la alegación de que la señora Brignoni Jiménez se cayó por haber sido dejada sola no era cierta y que no hubo un acto negligente por parte de Hogar Casa Feliz, Inc. A tenor con lo anterior, denegó la *Moción Solicitando Sentencia Sumaria* presentada por Chubb Insurance Company y ordenó la continuación de los procedimientos.

Inconforme, el 13 de marzo de 2026, la parte peticionaria compareció ante nos mediante el presente recurso de *certiorari*. En el mismo formula los siguientes señalamientos:

> Erró el Tribunal de Instancia al determinar que hay hechos en controversia que impiden resolver el asunto de cubierta de manera sumaria.

Erró el Tribunal de Instancia al determinar que la reclamación no está excluida por ninguna de las exclusiones levantadas por Chubb.

Luego de examinar el expediente ante nuestra consideración, y con el beneficio de la comparecencia de las partes, procedemos a expresarnos.

II

A

Debido a que la industria de seguros está revestida del más alto interés público, es regulada extensamente por el Estado. *Carrasquillo Pérez, et. al. v. CSM,* 214 DPR 1033, 1049 (2024); *Barreto Nieves at al. v. East Coast,* 213 DPR 852, 862-863 (2024); *Consejo Titulares v. MAPFRE,* 208 DPR 761, 773 (2022); *Feliciano Aguayo v. MAPFRE,* 207 DPR 138, 149 (2021). El Código de Seguros de Puerto Ricio, Ley Núm. 77 del 19 de junio de 1957, según enmendada, 26 LPRA sec. 101, *et seq.*, es la ley especial a través de la cual se reglamentan las prácticas y requisitos de la industria de los seguros. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 632 (2009). El Código Civil le sirve de fuente de derecho supletorio. *Jiménez López et al. v. SIMED,* 180 DPR 1, 8 (2010); *Banco de la Vivienda v. Pagán Ins. Underwriters*, 111 DPR 1, 6 (1981).

Según definido, el contrato de seguros es aquel "mediante el cual una persona se obliga a indemnizar a otra o pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". 26 LPRA sec. 102; *Carrasquillo Pérez, et. al. v. CSM,* supra, pág. 1049; *Barreto Nieves at al. v. East Coast,* supra, pág. 863; *Feliciano Aguayo v. MAPFRE,* supra, pág. 148. En estos contratos, "el asegurador asume determinados riesgos a cambio del cobro de una prima o cuota, en

virtud de la cual se obliga a responder por la carga económica que recaiga sobre el asegurado, en el caso de que ocurra algún evento especificado en el contrato". *Feliciano Aguayo v. MAPFRE,* supra, pág. 149; *ECP Incorporated, v. OCS*, 205 DPR 268, 278 (2020); *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1023 (2017). Así, los contratos de seguros tienen como característica esencial la obligación del asegurador de indemnizar al asegurado. *Feliciano Aguayo v. MAPFRE,* supra; *OCS v. CODEPOLA, Inc.*, 202 DPR 842, 859 (2019).

Se denomina póliza el documento donde se consignan los términos que rigen el contrato de seguro. 26 LPRA sec. 1114(1). Conforme dispone el propio Código de Seguros, en primera instancia las cláusulas de una póliza se interpretarán de manera global, examinando el conjunto total de las disposiciones, términos y condiciones vigentes a la fecha que se juzgue relevante. 26 LPRA sec. 1125. *Rivera Matos, et als. v. ELA, et al.,* 204 DPR 1010, 1020 (2020); *R.J. Reynolds v. Vega Otero,* 197 DPR 699, 707-708 (2017); *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 279 (2015).

En consecuencia, corresponde interpretar el lenguaje plasmado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical. *Rivera Matos, et als. v. ELA, et al.,* supra, pág. 1020; *Jiménez López et al. v. SIMED*, supra, pág. 12; *Echandi Otero v. Stewart Title*, 174 DPR 355, 371 (2008). De igual forma se examinarán las cláusulas desde la óptica de una persona de inteligencia promedio que fuese a adquirir el seguro. *S.L.G. Ortiz-Alvarado v. Great American,* 182 DPR 48, 73 (2011). De este modo, se garantiza que el asegurado que adquiere una póliza reconoce el alcance de la protección del producto que ha comprado. *Rivera Matos, et als. v. ELA*, et al., supra. De este modo, no se favorecerán interpretaciones sutiles que le permitan a la

aseguradora evadir su responsabilidad. *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 394 (2009); *Cooperativa de Ahorro y Crédito Oriental v. S.L.G.,* 158 DPR 714, 723 (2003). A lo que se añade que al interpretarse la póliza debe hacerse conforme al propósito de la misma, o sea, el ofrecer protección al asegurado. *Cooperativa de Ahorro y Crédito Oriental v. S.L.G.,* supra.

Ahora bien, los términos del contrato de seguro se consideran claros cuando su lenguaje es específico, sin que dé lugar a dudas, ambigüedades, o sea, susceptible de diferentes interpretaciones. *R.J. Reynolds v. Vega Otero,* supra, pág. 708; *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 899 (2012); *S.L.G. Francis-Acevedo v. SIMED*, supra, pág. 387; *Echandi Otero v. Stewart Title,* supra, pág. 370. Con ello, el asegurado que adquiere una póliza tiene derecho a confiar en la cubierta que se le ofrece, leyendo las cláusulas del contrato a la luz del sentido popular de sus palabras. *Íd.* Cuando una póliza contiene una cláusula confusa, se interpretará liberalmente a favor del asegurado. *Cooperativa de Ahorro y Crédito Oriental v. S.L.G.*, supra, pág. 723; *Quiñónez López v. Manzano Posas*, 141 DPR 139, 155 (1996).

B

Además de disponer para la indemnización por daños en algunas circunstancias, constituye una práctica usual que los contratos de seguros incluyan cláusulas para establecer la obligación de la compañía aseguradora de proveer representación legal al asegurado. *Echandi Otero v. Stewart Title,* supra*,* pág. 371; *PFZ Props. Inc. v. Gen, Acc. Ins. Co.*, 136 DPR 881, 893 (1994). Los tribunales consistentemente han interpretado que la obligación de ofrecer representación legal al asegurado es aún más extensa que la obligación de indemnizar por daños en la medida en que éstos están cubiertos por una póliza de seguros. *Pagán Caraballo v. Silva*, supra,

págs. 111-113; *Vega v. Pepsi Cola Bot. Co.*, 118 DPR 661, 668 (1987).

Ahora bien, el deber del asegurador de defender al asegurado de acciones bajo la cubierta del contrato se mide, en primer lugar, por las alegaciones del demandante. *Echandi Otero v. Stewart Title,* supra*,* pág. 372; *PFZ Prop. v. Gen. Acc. Ins. Co.*, supra, pág. 896. Éstas tienen que describir hechos que coloquen el daño dentro de la cubierta de la póliza, independientemente de la responsabilidad que en última instancia tenga el asegurado con el demandante. *Íd.*; *Fernandez v. Royal Indemnity Co.*, 87 DPR 859, 863 (1963). No obstante, si las alegaciones claramente excluyen de la cubierta de la póliza los daños reclamados, no podrá imponerse a la aseguradora el deber de defender. *Echandi Otero v. Stewart Title,* supra*,* pág. 372; *PFZ Prop. v. Gen. Acc. Ins. Co.*, supra, pág. 896; *Vega v. Pepsi-Cola Bot. Co.*, 118 DPR 661, 665 (1987).

C

Por otra parte, al evaluar el alcance de la protección brindada por una póliza es igualmente necesario examinar si existen cláusulas de exclusión en el contrato. *Rivera Matos, et als. v. ELA, et al.*, supra, pág. 1021. Como es sabido, las cláusulas de exclusión contenidas en las pólizas de seguro tienen el propósito de "limitar la cubierta establecida en el acuerdo principal y disponen que el asegurador no responderá por determinados eventos, riesgos o peligros." *Viruet et al. v. SLG Casiano-Reyes*, supra, pág. 279; *Monteagudo Pérez v. ELA,* 172 DPR 12, 21 (2007). La función de este tipo de cláusula es "eliminar la responsabilidad que tiene el asegurador de indemnizar por las pérdidas resultantes de los riesgos excluidos." *Echandi Otero v. Stewart Title,* supra*,* pág. 371.

Como regla general, la jurisprudencia ha establecido que las exclusiones son desfavorecidas, por lo que han de interpretarse restrictivamente en contra del asegurador y de este modo resguardar

la esencia propia del seguro, que no es otra cosa que la de ofrecer la mayor protección al asegurado. *Rivera Matos, et als. v. ELA, et al.,* supra, pág. 1021; *Viruet et al. v. SLG Casiano-Reyes,* supra, pág. 279; *Maderas Tratadas v. Sun Alliance,* supra, pág. 899. No obstante, y cónsono con la norma general, si una cláusula de exclusión aplica claramente a determinada situación, la aseguradora no está obligada a responder por los riesgos expresamente excluidos. *Echandi Otero v. Stewart Title,* supra, pág. 371; *Molina v. Plaza Acuática,* 166 DPR 260 (2005); *Marin v. American Int'l Ins. Co. Of P.R.,* 137 DPR 356, 362 (1994). **En vista de lo anterior, nuestro Tribunal Supremo ha recalcado que, en primer lugar, corresponde al asegurado el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene que evidenciar que aplica alguna exclusión.** *W.M.M., P.F.M. et al. v. Colegio et al.,* 211 DPR 871, 898 (2023); *Rivera Matos, et als. v. ELA, et al.,* supra, pág. 1021; *Echandi Otero v. Stewart Title,* supra, pág. 378; *Martínez Pérez v. U.C.B.,* 143 DPR 554 (1997).

D

Por otra parte, en nuestro ordenamiento, la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, regula todo lo concerniente al mecanismo de sentencia sumaria. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Negrón Castro v. Soler Bernardini, et als,* 2025 TSPR 96, 216 DPR __ (2025); *BPPR v. Cable Media,* 2025 TSPR 1, 215 DPR __ (2025); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024); *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023); *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 979. Un hecho material es "aquel que puede alterar el resultado de la

reclamación de acuerdo con el derecho aplicable". *Oriental Bank v. Caballero García*, supra, pág. 679; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros*, 211 DPR 455, 457 (2023).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. *BPPR v. Cable Media*, supra. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. *Íd.*; *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Ramos Pérez v. Univisión*, 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 677 (2018)*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, págs. 432-433.

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *BPPR v. Cable Media*, supra. En esta tarea, tiene el deber de citar específicamente los párrafos, según

enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, págs. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

> **Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

> **Tercero**, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> **Cuarto**, y, por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

### III

En su primer señalamiento de error, la parte peticionaria sostiene que el Tribunal de Primera Instancia erró al denegar su *Moción Solicitando Sentencia Sumaria* al concluir que existían controversias de hechos materiales que impedían disponer de la *Demanda Contra Tercero* por la vía sumaria. Le asiste la razón. Veamos.

Tal cual esbozamos previamente, nuestro ordenamiento jurídico exige que al presentar una moción de sentencia sumaria se cumpla con ciertos requisitos de forma. En particular, la parte promovente viene obligada a desglosar en párrafos numerados los hechos que estima incontrovertidos y a sostener cada uno con referencia específica a prueba admisible en evidencia. A su vez, la parte que se opone no puede descansar en meras alegaciones, sino que debe cumplir con el deber de controvertir de forma específica cada hecho propuesto, mediante la identificación puntual de la evidencia que sustenta su impugnación. De no hacerlo, el foro sentenciador puede dar por admitidos los hechos debidamente apoyados por la parte promovente y disponer del pleito sumariamente.

Por otro lado, al revisar una determinación sobre sentencia sumaria, este Tribunal se encuentra en la misma posición que el Tribunal de Primera Instancia, por lo que nuestra revisión es *de novo*. En ese ejercicio, nos corresponde examinar si tanto la moción como su oposición cumplieron con las exigencias de forma de la Regla 36 de Procedimiento Civil, *supra*, y determinar si, a la luz de la prueba documental sometida, existe alguna controversia real sobre hechos materiales que impida la adjudicación sumaria de la controversia.

En el caso ante nuestra consideración, surge del expediente que Chubb Insurance Company cumplió con las exigencias de la Regla 36.3(a) de Procedimiento Civil, *supra*, al presentar una *Moción Solicitando Sentencia Sumaria* en la que expuso los hechos en párrafos numerados y los sustentó mediante referencia específica a la evidencia documental sometida, consistente en la póliza Commercial General Liability Núm. 41 PR 902962-5 y en la comunicación cursada por Hogar Casa Feliz, Inc. a la aseguradora. Fundamentándose en lo anterior, propuso como hechos incontrovertidos, en primer lugar, que la parte demandante suscribió un contrato con la institución Hogar Casa Feliz, Inc., para el ingreso de la señora Brignoni Jiménez, mediante el cual dicha institución se obligó a proveer servicios de cuido, incluyendo alojamiento, alimentación, administración de medicamentos, monitoreo de signos vitales, asistencia de enfermería, supervisión y atención continua. Asimismo, señaló que en la *Demanda* se alegó que, mientras la señora Brignoni Jiménez se encontraba bajo el cuidado de la referida institución, fue dejada sola en dos ocasiones, lo que resultó en caídas que le causaron daños físicos y emocionales, atribuidos a la falta de supervisión y al incumplimiento de las obligaciones asumidas por el hogar mediante contrato.

En segundo lugar, estableció como hecho no controvertido la naturaleza del negocio asegurado. En particular, indicó que, conforme surge de la propia póliza, la operación del asegurado se describe como "*Home for the Aged*". Esta caracterización no solo emana del contrato de seguro, sino que fue igualmente reconocida por la propia institución Hogar Casa Feliz, Inc., la cual, mediante comunicación cursada a la aseguradora, admitió que se trata de un establecimiento para el cuidado de personas de edad avanzada licenciado bajo la *Ley de Establecimientos para Personas de Edad*

*Avanzada,* Ley Núm. 94 de 22 de junio de 1977, según enmendada, 8 LPRA sec. 351 *et seq.*[2]

Finalmente, en cuanto al contrato de seguro, la parte peticionaria estableció la existencia, vigencia y límites de la póliza, así como el acuerdo de seguro mediante el cual la aseguradora se obliga a responder por daños corporales únicamente cuando estos se encuentren dentro del ámbito de la cubierta. En lo aquí pertinente, destacó que la póliza dispone que no aplica a daños corporales que surjan de la prestación o la falta de prestación de servicios profesionales de cualquier naturaleza. De igual forma, señaló que la póliza excluye reclamaciones que surjan de obligaciones asumidas contractualmente por el asegurado. A base de lo anterior, planteó que, las alegaciones contenidas en la *Demanda* ubicaban la reclamación dentro de las cláusulas de exclusión de la póliza, por lo que la aseguradora no venía obligada a proveer representación legal ni cubierta.

Ahora bien, la *Oposición a Solicitud de Sentencia Sumaria* presentada por Hogar Casa Feliz, Inc. incumplió con las exigencias de la Regla 36.3(b) de Procedimiento Civil, *supra.* En particular, no presentó declaración jurada ni documento alguno que controvirtiera los hechos propuestos por la parte peticionaria, ni incluyó una relación específica y numerada de hechos en controversia con referencia puntual a evidencia admisible, según exige la norma. Tampoco identificó prueba que impugnara la existencia, vigencia o contenido de la póliza ni el lenguaje de las exclusiones invocadas. Por el contrario, se limitó a formular alegaciones conclusorias, tales como la ausencia de negligencia, la naturaleza de la caída o el momento en que se desarrolló la úlcera, sin acompañarlas de evidencia ni explicar cómo, a base de las alegaciones de la *Demanda,*

---

[2] Entrada Núm. 91, Anejo 1, pág. 2.

dichas reclamaciones quedarían comprendidas dentro de la cubierta de la póliza.

Establecido lo anterior, al evaluar la *Resolución* que nos ocupa, es menester señalar que la determinación del Tribunal de Primera Instancia incurre en una incompatibilidad lógica que impide sostenerla en derecho. Nos explicamos. En su determinación, el Foro Primario identificó como controvertidas, entre otras, las circunstancias en que ocurrió la caída de la señora Brignoni Jiménez, incluyendo si fue dejada sola, si medió falta de supervisión y si dicha omisión fue la causa de los daños alegados. No obstante, al aplicar el derecho a los hechos, el propio Tribunal concluyó que la alegación de que la señora Brignoni Jiménez fue dejada sola "no era cierta", que la caída ocurrió al caerse de sus propios pies y que no medió acto negligente alguno por parte de Hogar Casa Feliz, Inc.[3] De ese modo, el Foro Primario acogió los planteamientos de la parte recurrida y procedió a adjudicar asuntos que previamente había reconocido como controvertidos, sin que se hubiese presentado evidencia alguna que sustentara tales determinaciones ni que la parte recurrida hubiese incluido una relación específica y numerada de los hechos en controversia, conforme exige la Regla 36.3(b) de Procedimiento Civil, *supra.* Además, al resolver de esta forma, el Tribunal de Primera Instancia se distanció de la controversia que correspondía atender en esta etapa procesal, esto es, la determinación de si, a base de las alegaciones de la *Demanda* y los términos de la póliza, procedía imponer a la aseguradora el deber de proveer representación legal y cubierta. En ese contexto, la determinación recurrida descansa en una adjudicación de hechos carente de base probatoria. Por

---

[3] Entrada Núm. 99, pág. 10.

consiguiente, resolvemos que el Tribunal de Primera Instancia erró en su determinación.

En su segundo señalamiento de error, la parte peticionaria sostiene que el Tribunal de Primera Instancia erró al no concluir que, a base de las alegaciones contenidas en la *Demanda* instada en contra de Hogar Casa Feliz, Inc., las reclamaciones formuladas quedaban excluidas de la cubierta provista por la póliza Commercial General Liability Núm. 41 PR 902962-5. Le asiste la razón. Veamos.

Según esbozáramos previamente, en materia de contratos de seguro, corresponde en primera instancia al asegurado establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que recae sobre la aseguradora el peso de evidenciar la aplicabilidad de alguna exclusión. A partir de ello, la determinación sobre si una aseguradora viene obligada a proveer defensa o cubierta se realiza mediante un ejercicio comparativo entre las alegaciones contenidas en la demanda y los términos, condiciones y exclusiones de la póliza. Este análisis no depende de la adjudicación final del pleito ni de la veracidad de los hechos alegados, sino del contenido de las alegaciones formuladas por la parte demandante.

En ese sentido, el deber de defender surge cuando, de una lectura liberal de tales alegaciones, existe la posibilidad de que la reclamación se encuentre dentro del ámbito de la cubierta, aun cuando posteriormente se determine que el asegurado no incurrió en responsabilidad. Ahora bien, cuando de las propias alegaciones surge de forma clara que la reclamación descansa exclusivamente en hechos o conductas expresamente excluidas por la póliza, la aseguradora no viene obligada a proveer defensa ni cubierta. Así, el análisis que corresponde efectuar en esta etapa se circunscribe a examinar si los hechos alegados en la demanda, tomados como

ciertos para estos fines, colocan la reclamación dentro del ámbito de protección del contrato de seguro o, por el contrario, la ubican fuera de este por aplicación de una cláusula de exclusión.

En el caso ante nuestra consideración, la *Demanda* instada en contra de Hogar Casa Feliz, Inc., imputó a la referida institución haber incumplido sus deberes de supervisión, cuido, monitoreo y atención hacia la señora Brignoni Jiménez. En particular, se alegó que, el 10 de enero de 2023, fue dejada sola mientras se encontraba bajo el cuidado del hogar, lo que provocó una caída que requirió atención médica de emergencia y le ocasionó lesiones en la cabeza, cuello y espalda. Asimismo, se alegó que, el 7 de abril de 2023, sufrió una segunda caída, atribuida igualmente a la falta de supervisión, la cual le causó una fractura de cadera que requirió intervención quirúrgica. De forma separada, se imputó a la institución el desarrollo de una úlcera mientras la señora Brignoni Jiménez permanecía bajo su cuidado, alegación que se vinculó a la falta de atención y monitoreo adecuados. Estas alegaciones, consideradas en conjunto, se fundamentan directamente en la forma en que la institución brindó, o alegadamente dejó de brindar, los servicios de cuido a una persona de edad avanzada.

A la luz de lo anterior, procede examinar el lenguaje de la cláusula de exclusión de la póliza Commercial General Liability Núm. 41 PR 902962-5, expedida por la parte peticionaria a favor de Hogar Casa Feliz, Inc. En lo pertinente a daños corporales que surjan de la prestación o de la falta de prestación de servicios profesionales de cualquier naturaleza, el contrato de seguro dispone lo siguiente:

EXCLUSION – DESIGNANTED PROFESSIONAL
SERVICES
[. . .]

> This insurance does not apply to "bodily injury", property damage' or "personal and advertising injury" due to the rendering of or failure to render any professional service. This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.[4]

Al comparar la disposición antes reseñada con las alegaciones contenidas en la *Demanda*, se advierte que los daños reclamados se vinculan directamente a la manera en que se atendió a la residente mientras se encontraba bajo el cuidado de la institución, en tanto se imputa que las caídas ocurrieron por falta de supervisión y que el desarrollo de la úlcera responde a la falta de atención que se le debía proveer. Desde esa perspectiva, las reclamaciones no descansan en hechos ajenos a la operación del hogar, sino en la ejecución misma de las funciones inherentes a un establecimiento dedicado al cuidado de personas de edad avanzada, por lo que, aun sin adjudicar la veracidad de las alegaciones, estas describen una reclamación que surge del ámbito de los servicios que la institución venía obligada a ofrecer. A la luz del derecho aplicable, cuando una cláusula de exclusión aplica claramente a una determinada situación, la aseguradora no viene obligada a responder por los riesgos expresamente excluidos. En consecuencia, al surgir de las propias alegaciones que los daños reclamados se encuentran vinculados a la prestación, o alegada falta de prestación, de servicios de cuido, supervisión y atención, procede concluir que la reclamación queda fuera del ámbito de la cubierta provista por la póliza Commercial General Liability Núm. 41 PR 902962-5. Enfatizamos en que Hogar Casa Feliz, Inc., incumplió con su carga

---

[4] Entrada Núm. 91, Anejo 2, pág. 66.

de establecer que la reclamación estaba comprendida dentro de las disposiciones del contrato de seguro, mediante la presentación de una oposición que satisficiera las exigencias de la Regla 36.3 de Procedimiento Civil, *supra*, y la correspondiente evidencia que así lo demostrara. Por consiguiente, el segundo señalamiento de error se cometió.

Por todo lo anterior, determinamos que, Chubb Insurance Company expidió una póliza de responsabilidad a favor de la institución Hogar Casa Feliz, Inc., que posee una cláusula de exclusión clara y libre de interpretaciones, que lo liberó de responsabilidad, tanto de indemnizar como de proveer representación legal. En consecuencia, procede la desestimación de la causa de acción presentada en contra de la parte peticionaria.

IV

Por los fundamentos que anteceden, se expide el recurso de *certiorari* y se revoca la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones